Argument is not to be exceeded. 30 minutes per side. Ms. Bailey may proceed with the appellate. Good morning. This is the court. I'm Catherine Bailey from Malik Allah Akbar. I've reserved 10 minutes for rebuttal, please. Yes. We are back before the court today because Ohio has inexcusably and repeatedly failed to comply with the orders of the United States federal courts. Mr. Akbar's case is the only one in the country where a state has not managed to timely comply with the clear terms of an unconditional writ of habeas corpus. Following Saturday, this court should find that these circumstances are extraordinary and bar any further proceedings. Before I turn to Ohio's bad faith and inexcusable neglect, I do think it's worth talking briefly about the standard of review. I filed a 60 B modeling d'Ambrosio. But because federal jurisdiction in the district court never ceased until the unconstitutional constitutional judgment was gone. It could no reopening could occur. The district court's order of February, 29th, granting the unconditional writ had the potential to be a final order. If the warden complied, but because she did not, and she did not achieve compliance until May, 29th. I do believe that this court could assess both under a de novo standard. So, I'm concerned about whether there is jurisdiction that we have here. February, 20, if you could go through the dates, February, 29th, the district court granted an unconditional written said that your client had to be released within 5 business days. Is that am I correct there? Actually ordered that the death sentence needs to be vacated and then unconditional release. Yes, within 5 business days. That was on leap day, February, 29th. So, so was he actually released? I know he wasn't the judgment wasn't vacated until later, but was he released? My argument is that he was not your honor. One of the reasons I filed, I styled is a 60 B is because I believe that factual determination also affects the jurisdictional question. I do not believe that the warden achieved full compliance until May, 29th, 2024 when the vacator actually occurred. I think if you look at Saturday, if you look at Gertz, if you look at Edelman, the touchstone of compliance is when the unconstitutional judgment is removed, especially in the sentencing context. So, I don't believe that what occurred, first of all, was released and it did not comply with the order. I don't want to interrupt. There's more questioning about jurisdiction, but in terms of release, your client was actually turned over or release to the Ashtabula County Sheriff. Correct. On March 5, thereabouts. Yes, yes, your honor, I would label it more as a transfer and for a few reasons. This court's conditional order for the conditional read didn't even address release it only address vacator and it's this court that issued the mandate. The district court's opinion, the plain language ordered the state to vacate the conviction. And even the Supreme Court, not the conviction, excuse me, the sentence. Yes. Already getting tripped up on these different terms. But the directive was to issue a writ of habeas corpus vacating Jones death sentence until the state of Ohio conducts a new penalty phase. So, the vacator was originally contemplated by the mandate in this court and also by the plain language of the unconditional writ. I think you got it backwards. I think the the the remedy was that unless the state conducted a new penalty proceeding, then the death penalty sentence would be vacated. Not that it was vacated, but if the state did not proceed within 180 days, it would would be vacated. Is that correct? I mean, I can I can read you the opinion if you want. Yeah, I have the language right here. I think the conducts is also the completed. So unless they complete a new penalty phase, you're correct. Then it's then it's vacated. But it wasn't ordered vacated then. No, I'm excuse me, your honor. I'm talking about the unconditional writ order from Judge Oliver. Oh, OK. You're not talking about our opinion. You're talking about Oliver's opinion. Yes. The plain language. Well, your your mandate only addressed vacator as you know, when the writ springs to life, what would happen would be vacator. Do not address release. And then the plain language of the unconditional writ order was clear that vacator must occur. Is there is there a date that I guess maybe I can call on Mr. Akbar argues that the vacator should have occurred the death sentence? Is there is there a specific date that you're arguing that that death sentence should have been vacated? I think any time within the five days it should have been vacated in accordance with the order. Because they Mr. Akbar appealed. Judge Oliver's order, as I recall. And there's at least an argument that that appeal divested the state court of the ability to vacate the death sentence. And that's one reason why it was not vacated until 90 days later. Yeah. Why is that not an accurate sort of recitation of the law on the record? One minor correction there, Judge. He wasn't he wasn't appealing Judge Oliver's order. He was appealing Judge Schroeder's various ongoing orders in the trial. OK, that's correct. Yes. In the Ohio State Court of Appeals. But this issue of the notice of appeal is a smokescreen. And I'll explain why. It's really a happy coincidence for the warden that that was even docketed. I just want to back it up and explain that Mr. Akbar at the time was granted rights under Freda. He was acting pro se. He was not aware that Judge Oliver had ruled. I think there's an underlying question of why state court retrial proceedings were ongoing at all. The mandate had expired. This trial judge had refused to remove the sentence. And yet he was still subjecting him to proceedings from November 22nd all the way through the first of March. He chose after the oral argument in the district court, the trial judge chose to resolve motions that had been pending for over a year and a half. So, Mr. Akbar, when he filed that notice, wasn't even aware that the unconditional writ had issued. Secondly, this issue of jurisdiction, even if that was the warden's belief, the trial judge did not say the proceedings until the next week. Well, after that five day period had expired. So there's no action by the warden to effectuate vacator at all during that period. If that is her true beliefs, which isn't even really in her notice, by the way, that was filed with the district court, which was also belated. If I were the prosecutor in that circumstance. Pardon me. And I thought that this notice of appeals somehow complicated my ability to comply. There's many actions I would take. I would file a protective motion to vacate anyway. I would call counsel. I would ask for a status conference with the district court. I would file a motion explaining the complication and request an extension or I'd ask the district court to enlist its help to help me achieve compliance. None of those reasonable good faith actions were taken. Moreover, after that compliance period already had expired with no extensions asked for, the trial prosecutor filed such a motion in the court in the trial court asking to vacate. And the state prosecutor's position was that jurisdiction remained in order to effectuate that singular order. Another thing that they could have done, even if jurisdiction went up, they could have filed an emergency motion to remand and vacate the judgment. I think it's worth reiterating that this doesn't happen every day. You know, we're we're in the Super Bowl of habeas when a five day order from a federal court judge hits your desk telling you to get rid of a death sentence that's been infirmed for 27 years. You do something about it and you don't print off a copy of the indictment in the clerk's office, bypass the judge and say that it was satisfied. But hypothetically, if the warden within the five business days gave up custody to the Ashtabula County Jail, why would that not constitute compliance with the district court's order? Question number one, and then question number two, if you thought that it didn't, should you have appealed the district court's order at that point in time? Number one, the order was to vacate the unconstitutional sentence, and that was never done. If you look at Edelman, it's state court action that matters, not something that the warden can achieve or assume or believe on her own. The warden wants this court to believe that she can just go unconditionally release people with no action by the judgment imposer retracting that judgment. I don't believe that that's accurate. In Lovin's, for instance, there was actual physical release. He was released from the prison, rearrested, represented the next day. We don't even have that situation. We have a transfer of custody that like it had been occurring during the entire mandate period. And your second question is why I should not have appealed at that moment in time. I was renewing my request for sanctions given the noncompliance. And I do believe the district court, because it's because its jurisdiction continued, had a first bite at the apple to assess whether or not it had been complied with. Because the district court was the one who issued the unconditional writ. There's another reason I don't believe abuse of discretion standard is necessary because it's the first and only time he assessed a separate noncompliance. And that was with the unconditional writ of habeas corpus. So you were seeking and the procedures here are so confusing and we obviously want to get it right. You were seeking relief from Judge Oliver. In the first instance, yes. Because he had issued a writ that would allow retrial of the penalty phase. And you were seeking sanctions because the vacatur had not occurred within the five days that he had ordered in his prior decision. Is that right? Yes, and I did not see that until the 30th day where vacatur still had not been achieved. So I was asking I could have styled it, I believe, as a motion to enforce the unconditional writ of habeas corpus and impose sanctions or emotion to amend or reissue. So what happened? Yeah, what happened then? He denied your motion. Is that it? What happened when he sat on the motion? We had two more months of inaction by the warden. Finally, on May 29th, it was vacated on the 90th day. He then thereafter issued his opinion. And that is even trickier. I think, you know, if he were to impose sanctions and agree that compliance had not been achieved, would there need to be a reopening then? You know, did vacatur truly cut off jurisdiction? I think there's support in Satterley and Gertz that assessing compliance with the order still persists because otherwise the district court would be powerless to enforce its own orders. Is there a reason why you would not have sought vacatur of the death sentence, like, immediately? It was not vacated on March 5. If it's, you know, a court order that had not been followed, why would you have waited so long? Why not go into court on March 6 or 7? And that would be more diligent action, I would think. I think there's an argument that I should have done that, that, you know, diligence is not on the petitioner. It's on the state in this instance. I also didn't pounce at the 180-day mark, you know, like Councilman Lovins. We had given two months acquiesced in the staying of the mandate, the 180 days, the 190. I think I waited a week for the district court to act or the warden to act. I don't think this is a gotcha type of litigation. We have been patient. We have been very clear in what we require under the Constitution, and the federal courts have been unequivocal. So these grits are, you know, baked in is the timeline. I filed, especially after the trial prosecutor took the position that they still weren't in compliance. And I think that's binding on the state. Okay, I think that answers my question. I guess before your time expires, what is it that you're asking this panel to do today? I mean, what is the release that you're seeking? I'm asking that under de novo review, this legal conclusion of extraordinary circumstances, considering the totality of everything that has happened up until May 29th, when federal jurisdiction arguably ended, that this court find these circumstances to be extraordinary. They find the noncompliance with the unconditional writ in particular to be completely unique and standing alone. And they tell Ohio enough is enough, that it doesn't seem to be time that's the issue. It seems to be management of this re-prosecution. And I'd like to get into some of the bad faith actions they've taken. So what do you want us to do? What are you asking us to do? I'm asking for unequivocal release.  And no opportunity to retry the penalty phase. Is that right? That's correct, because they've been given two chances, and both times they did not comply. There is no other case where this has occurred. All right. I mean, you said you're asking for a ruling after we lost federal jurisdiction? I mean, if we lost federal jurisdiction, how can we do anything? You retain jurisdiction to assess compliance. Okay. The death sentence has been vacated. That was the unconstitutional action that we had jurisdiction over. But since that's been vacated, how is there a constitutional violation here? I understand that, Your Honor. It's more about enforcement of your court's own orders. Okay. I mean, we've got to have actual case and controversy. And, I mean, the death sentence has been vacated. You want us to chastise the state for not doing it sooner? Or, I don't know, sanction them? I'm not sure what the remedy is you even want. It's assessing up until May 29th whether extraordinary circumstances persisted and whether what happened after the initial barring of retrial, especially until that compliance period, if that additional noncompliance warrants what Judge Oliver did not feel was warranted in the first instance. So there could have been a writ granted that would bar retrial of the penalty phase, right? Yes. That could have been done. And that is what you are asking us to do now. Yes. Because you're saying because the state has so messed up the redo of the penalty phase, that the state does not deserve a second chance to retry the penalty phase. And so you're saying it's part of the original decision that this court made several years ago that the penalty phase was fatally flawed and that he needed at least to have a new penalty phase. And you're saying that, well, it's been two years now since we issued our opinion and the state has so messed up the redo of the penalty phase that there should not be a redo of the penalty phase. And you're saying that's part of our power. Yes. Or issuing the habeas rant two years ago is to say enough is enough. Like if he had, if the state had taken 15 years to do a new penalty phase, would we have to throw up our hands? No, the continuing jurisdiction has to do with enforcements of the writs of habeas corpus over which you enjoy jurisdiction. You look at Satterley and Gertz, even when this went up to the appellate court, there was still the remaining question of whether to bar retrial in the wake of an unconditional writ. That is the issue here is enforcement of this court's judgment in the habeas context. The issuance of the unconditional writ in the issuance of the, excuse me, the conditional writ and the unconditional written in front of the district court that at all times, federal courts enjoy jurisdiction to assess compliance with their orders. And as long as the state sneaks in and, you know, vacate something right before, you know, an appeal that doesn't divest this court of jurisdiction. And that's clear on the face of Satterley and Gertz. Are we also reviewing the judge Oliver's decision with respect to rule 60B5 and 60B6? And that would be, I think under an abusive discretion standard. Is that also before us? Yes, it is. I mean, that's the second certificate of appealability. And that's what I initially addressed. The standard of review murkiness is because I don't know that there was a reopening that was proper at that time. If you agree with our position, which I believe is correct, the compliance had not yet been achieved. It could be that additional briefing would be helpful on this point. I'm regretting starting with this because I'm not getting to the other things, but I will in the rebuttal. But that, you know, RITs are meaningless if you can't assess compliance. And compliance is meaningless if you can't enforce sanctions. And so whether it's through 60B and you feel that necessary to retain your jurisdiction or a de novo review of extraordinary circumstances, you know, in Mr. Levin's case, he had been released and you still assessed it. This case is no different. You're reassessing the propriety of whether the sanctions should have been imposed. Yeah. I just want to note sort of maybe, maybe it's a minor matter. It seems that the primary argument under the rule 60B is that there are, there are extraordinary circumstances under 60B-6, but there isn't much argument under 60B-5. The special, whatever that special circumstance, whatever that special, I forgot what the exact phrasing is. I don't, I don't remember, I don't recall, and I don't believe that I specifically cited a subsection of 60B, but the extraordinary circumstances would merge the extraordinary circumstances test that you're reviewing. There's no difference in the case law. So if you disagree with the legal conclusion of extraordinary circumstances, you know, the abuse of discretion standard, I believe is satisfied because that's a clear error of law. I am over my time. I realize, or excuse me, I'm in the last minute. I'd just like to highlight. Excuse me, Judge Moore. Time has expired and now it's. Oh, I'm sorry. It's red. I'm sorry. It's very confusing, but you know, if you want to use a moment of your rebuttal now to address an issue, that's fine. Yeah. I would, I would just like to reiterate finally, the seriousness of where we are and that this warden in front of the district court disavowed that she represented the state of Ohio, that she had anything to do or any responsibility with the trial court. So I'd like you to assess this purported release in terms of her, which I think is fairly characterized as insolence in front of the district court judge at oral argument, that that's not her responsibility. That's a different arm of the state. And I think that position is misguided. It lacks integrity and the warden needs to be held responsible for the state as a whole. Thank you. Thank you. Good morning. And may it please the court. I'm Katie Rose Talley on behalf of the warden. Despite the petitioner receiving all relief that this court granted him and the district court granted, and despite this court's unanimous affirmance of the petitioner's conviction for an aggravated premeditated murder of a police officer, he is now asking this court whether he may nonetheless escape from his crime through resentencing delays that the district court found were largely self-inflicted. The answer to that must be no. And I want to touch on three reasons for it in response to the arguments that petitioner has raised this morning. So first, the warden achieved full compliance and fully complied with all the relief that this court ordered when she released the petitioner within five business days of the district court issuing the unconditional mandate. And there is nothing left under EDPA for this court to order the warden to do. But, but the, excuse me, my understanding is that the warden released him to the extent that the Ashtabula County officials, is that right? Was he actually transferred to the Ashtabula County jail within the five business days? Yes, Your Honor. So, and I want to be crystal clear on this point because it's critically important, but when the Ritz became unconditional and final and the petitioner was entitled to release, the warden acted promptly. She relinquished custody of him. And since her release of him, the petitioner has not entered an Ohio. He has not returned to the Ohio Supermax facility. He has not been held in any Ohio prison. He is instead picked up by the local sheriff and put into the County jail along with every other convicted criminal who is sitting awaiting sentencing. So he is no longer serving the death sentence. He is not serving any sentence. The sentence has been vacated and he was released from the warden's custody, giving him full relief under this court's habeas red. Well, so, so just, excuse me, I just need to get the facts straight in my own mind. He is currently in the County jail. Is that correct? That's correct, Your Honor. He has not been returned to any Ohio state prison facility since the warden lost custody over him and had to release him. Okay. But I thought that the ruling of the district court, and correct me if I'm wrong, I thought the ruling of the district court was that the death sentence had to be vacated. Did that happen within the five days? So I'll answer your question in two parts, Your Honor. The order that the district court issued said to vacate the sentence and release the petitioner from custody within five business days of the order. And the order was issued on February 29th, 2024. The petitioner was released on March 5th, 2024. And it is the warden's position that her conduct in releasing him constituted effective vacature of his sentence. And we can see. So there, so excuse me for interrupting you. So there was not in fact a vacate vacature of the sentence within the five days, correct? You're saying it was in effect by virtue of the warden giving up custody, but I'm asking usually when you think of a vacature of an order that there will be an order from a court that did not happen, did it? There was no formal docket entry, Your Honor, because the state trial court lost jurisdiction by virtue of the petitioner's immediate appeal within that five business day window from the state trial court to a state intermediate court, which divested the state trial court of jurisdiction to do anything at that point. So Your Honor is correct, that there was not a formal entry of vacature by the state trial court. However, this court has said repeatedly and, and Edelman and D'Ambrosio, that it is not necessary for there to be a formal vacature entry, although that's preferred. It's not necessary for that to happen for there to be vacature. The court said in those cases that it looks to the conduct of the state prosecutors and state courts to see whether or not a vacature has occurred. It looked at state prosecutors' representations to the courts in those cases and to, to other indicia. I think it's also helpful to look to the example of this court's decision and Fisher versus Rose. Now, as Fisher, the defendants or the petitioner's sentence was his underlying conviction was vacated by a habeas writ and the state wished to retry him. And Fisher, he was never released from state custody. This court held that that was not a problem and interpreted it as vacated because the court said that once the writ became effective, once it was no longer conditional, at that point, the state still had jurisdiction to hold him, to have custody over him because there was an underlying criminal indictment based on what she could hold him and, and keep him in custody awaiting retrial. And the court looked to several actions of the state prosecutors and Fisher to determine that yes, he was being held in custody pursuant to the indictment at that point, he was not being held in custody anymore pursuant to the underlying conviction. And some of the actions that it looked at included the state's appointment of counsel for the petitioner, that it set bond and that it set a retrial date. Here we likewise have indicia based on the warden's conduct, that the warden no longer considered the sentence, the sentence and the underlying the sentence as valid and effective anymore. So you have the warden, the warden immediately seeking an arrest warrant that was docketed in the state trial court the day after the district court issued the unconditional writ. And then the warden releasing the petitioner, the sheriff arresting the petitioner holding him at County and prosecutors informing the state court that they understood that the sentence, the underlying sentence was vacated, but asking if when the court regained jurisdiction, if it would nonetheless make that a formal entry for the record on the docket. Okay. I have another, another question. Sorry to interrupt, but the time goes by so quickly. Suppose hypothetically that the state court does not undertake a new penalty phase in the next few years. What remedy would Mr. Akbar have? Well, Mr. Off the petitioner would be, your honor would be just as capable of pursuing a constitutional claims based on that as he would be. What specifically would you say would work for Mr. Akbar? Your honor, we would think perhaps like a 14th, 14th amendment to process claim, but the process under for him to do that would be to await for the entry of a, of a sentencing judgment. My hypo is that the state does not actually go forward because they realize that all the evidence is really old and they're not going to be able to get people and so on. So they're just going to keep them in the County jail. It's a hypo. They're just going to keep them in the County jail forever. Yeah. I have two responses to your hypo. First, that exact argument was presented to this court in Edelman and this court rejected it. And it said that making a ruling based on that sort of hypothetical concern is inappropriate under EDPA under ethics, deference and values of federalism and comedy, because it presumes that the state judiciary is either going to be ineffective or act in bad faith here. Judge Oliver has made factual findings to the exact contrary, and that's on pages 17 through 18 of the district court opinion, which is a docket number 287 in the district court docket. And there he made a factual findings that here the state court has, has advanced the proceedings expeditiously, even after the writs became effective and that it is proceeding a pace that the trial court, the state trial court has shown great regard both for the need for diligence and speed, but also for conducting a fair re-sentencing. But what's happening in the resentencing now? Yes, your honor. And so the Mr. The petitioner was proceeding pro se recently. The state trial court has revoked his process status because he was filing dozens of motions that were inappropriate and delaying the procedure. So now he has appointed counsel jury questionnaires have been sent out. The court has impaled jurors and it has set a resentencing penalty based trial date for September 29th of this year. So within a few months, your honor. So there is no indication in the record to contradict. I'm sorry that I don't understand. You say the state court has impaneled the jurors, but the trial is not going to happen until September. This seems very unusual. I apologize. I misspoke your honor. He is engaged in proceedings to select full jurors, including finalizing jury questionnaires, but there is not a jury and held yet because trial is still a couple months out. Okay. So he has not been sentenced right now. Is that right? He's not, he's not subject to a sentence. So the state is proceeding with a sentencing procedure and the, the state court may or may not impose the death penalty, but in any event, he needs to be sentenced to something. And right now he is opposing any sentencing at all. I mean, right now he's sitting in jail convicted without a sentence. It seems like due process kind of requires that he'd be sentenced sooner or later, but he's, he's intentionally trying to delay this right now. Right. And I kind of wonder about, you know, our jurisdiction that say he gets a sentence of a term of years, he's sentenced to 50 years or something. I, I failed to see the constitutional violation that we held previously was, was about the penalty phase about using inferences about black defendants more likely to be violent, all that stuff. That was the constitutional violation here, just a regular sentencing proceeding. I failed to see a federal constitutional issue. Obviously he's not there right now. So I think it's speculative. Isn't it now to, for us to say that somehow we should exercise our jurisdiction. And I just, you know, the, the sentencing may go, go forward and be totally fine. Do we have jurisdiction at all right now? Uh, the, the, the petitioner is not in custody of the warden who is the defendant and the constitutional violation I don't see is existed anymore. He's not in custody with a warden. He's not in custody in violation of his federal constitutional rights. So how do we have jurisdiction at all right now? You don't your honor. And that goes to my second point. Okay. Why, why, why haven't you argued that? I, I, I know that we have to, we have to sue a sponte raise our own jurisdiction and I I'm, I'm doing it right now. I think judge Moore did it as well, but uh, why haven't you argued that you're brief? That goes to the point we mentioned with respect to Edelman. I believe that the district court also mentioned something to this effect, but Edelman, uh, which, which we cite stands for the proposition that once the habeas writ is fulfilled, once that relief is granted, which it has been at that point, the federal court loses at the jurisdiction habeas jurisdiction. And so any prospective or prophylactic potential constitutional violations that happened during resentencing, this court can't supervise under purchase. The court doesn't get to supervise resentencing proceedings. So of course the petitioner could bring a violation based on the resentencing proceedings down the road, but he would need to first wait for an adverse sentencing judgment and then exhaust those claims in state court before coming back. It's speculative right now, whether he'll, he'll have a constitutional violation at sentencing. It's speculative whether that a death sentence would even be imposed or anything would be a violation of the constitution. So I don't know if we have an actual contract case in controversy right now. That's for sure. All of that goes to hypothetical, uh, constitutional violations at a second sentencing. But what I keep coming back to is the passage in the Saturday case, which says in extraordinary circumstances, such as when the state inexcusably repeatedly or otherwise abusively fails to act within the prescribed time period, or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial, a habeas court may forbid re-prosecution. And so why isn't that triggered here that our order came out several years ago and there hasn't been a retrial of the penalty phase and it is likely hypothetically to prejudice the ability of the petitioner to mount a defense at the redo of the penalty phase that then we may forbid re-prosecution. And that's really what was at issue in the judge Oliver orders, whether because of the intransigence of the state, there should be a bar on redo of the penalty phase. Yes, Your Honor. So that gets to my third point, which is that there are no extraordinary circumstances here. Certainly not some that would justify this court extending the only case in which it is found extraordinary circumstances, D'Ambrosio to the unique context here where there is actually a valid conviction and telling a state it cannot impose a sentence for that valid conviction. I think there are three reasons for that. Are they arguing that he cannot be sentenced at all? Is that the position of the petitioner? I mean, that's extraordinary. It is, Your Honor. You have a petitioner who is sitting under a, a valid constitutional conviction that was upheld by a unanimous decision of this court for aggravated murder of a police officer who is asking this court to tell the state that it cannot sentence him at all. Except he has been in jail for how long? How many years? 27 years, Your Honor, but he is currently serving no sentence or a valid constitutional conviction. Now, he argues that the reason that he should be excused from serving a sentence is because of delay. And that's wrong because those don't amount to extraordinary circumstances here for three reasons that I want to briefly touch on. First, Judge Oliver found that the lion's share of the delay and the resentencing process has been caused by the petitioner, specifically his decision to litigate pro se, which necessitated three different competency evaluations, multiple hearings and has become dilatory to the, to the stage that the state trial court revoked his pro se stat. And then separate from the fact that petitioner is complaining about prejudice from delays that he primarily caused. If you do look to the delays he alleged were caused by the state, the prosecutor's decisions to file motions to recuse one of the judges. That, that decision was not to the extent that it caused any delay. This court would have to first determine that that two month delay was caused by the prosecutor's bad faith. And it's not every delay and the sentencing process and the trial process is caused by bad faith. This court's decision in love is a good example of not. And the district court found here that the state prosecutors did not act in bad faith. Why did they seek to recuse the state judge? The prosecutor asserted multiple reasons. She believed that the state judge was prejudiced against the prosecution personally, but also was worried that he was prejudiced against the, the petitioner. Now the Ohio Supreme court found that ultimately, while some of the statements, the state trial court made to the prosecutor could have led her to believe that he was acting aggressively towards her, that that ultimately wasn't enough to recuse him. But beyond the fact that the prosecutor moved to recuse him, I want to also note that the petitioner separately filed a motion to recuse the exact same judge. So it would be very odd to say that any, any delays from the prosecutor's attempt to recuse the judge were prejudicial to the petitioner who believed that that same judge should be recused. And lastly, even if this court were to think that those decisions were done in bad faith, the court would still have to find that that delay prejudice, the petitioner's ability to effectively mount a defense at the, at the re-sentencing phase. It does not, it has not prevented him and it will not prevent him from presenting mitigating evidence. Can I focus one second? No, go ahead and finish your thought. I've got a question. Go ahead, please. Okay. Your honor, but briefly, just to note that it's very helpful to contrast this case with the court's decision in D'Ambrosio in which it differed in meaningful ways. And that's the only case where the support has found circumstances extraordinary enough to justify what it calls the extreme relief of barring retrial. But there, there was no valid conviction there. The same constitutional error than infected the original trial infected the, the re-sentencing, which is not the case here. You had an effective assistance of counsel claim in the, in the original re-sentencing here, the petitioner's raising claims that sound in due process. And additionally. Yeah. So my question, I'm sorry, I don't want to get this question. I want to focus again on this period in March of 2024, when the release occurs, Mr. Akbar first week of March or so, maybe it was March five. The warden had five days, I guess it was to release, turn over Mr. Akbar that occurred. He was turned over to Ashland County sheriff officials. But Mr. Akbar this morning really focuses on this failure to vacate the death sentence. There seems to be a strong emphasis on that. And the writ had converted from being a conditional writ to an unconditional writ, which is certainly of a different nature than the conditional one. So the death sentence is not vacated within the five day period as, as I understand is required by the order. So I'm just wondering whose responsibility was it to seek vacature of the death sentence? Because it didn't occur for 90 days. And I guess my other question is what, what difference does it make that it occurred later as opposed to in the five day period? Does that make sense? I'd like to start with the second part of your question, because I think that that's the key to the whole case. We heard the magic words come out of petitioner's mouth earlier this morning twice, actually, when she said they achieved full compliance, they achieved full compliance. And her issue was that full compliance wasn't achieved in five days, but the material point for this court's jurisdiction and for petitioner's relief and entitlement under the habeas writ is that full compliance has been achieved at this point. There is no dispute that there is a formal docket entry vacating his Senate. So if this court disagrees with us, that it wasn't effectively vacated by the state conduct, it is vacated. Now it's vacated today. He is not serving out an unconstitutional Senate. He was released and he was timely released. So even if you think he was not timely, his sentence wasn't timely, formally vacated, the material point for this court's habeas jurisdiction and for the relief for petitioner is that it was vacated. It is vacated now. So under EDCA, there is nothing for this court left to order the wardens, the sole defendant here to do. I guess my question is that, so let's go back to March 5th. I mean, who had the responsibility? I guess I'm just trying to get a sense of this to seek vacatur of the death sentence. My understanding is at some point, 19 days later, I think it was, maybe it was the prosecutor filed a motion seeking vacatur. And my recollection is maybe the warden even opposed that, but whose responsibility? It didn't, you know, the order required release and vacatur. Vacatur of the death sentence occurred at some point, but it was 90 days later. So I'm just wondering, it didn't happen. If we determine that release was not in effect, vacatur. So I'm just wondering whose responsibility is that? That's in the order. Is that the warden's responsibility? The prosecutor's? Mr. Ackbar's? Well, Judge Colt, so the petitioner has a laundry list of actions that he wishes the warden would have taken, or that he asserts the warden should have taken. But the district court's order didn't place any of that burden on the warden. The district court's order just said you need to vacate and release. Well, the warden had custody over the petitioner's body. And so she released him. The warden doesn't have control over the state trial court's dockets to, to enter docket entries. And so there was, I think, some understandable confusion on the part of the state prosecutors about what precisely they needed to tell the state court and when. The state court was informed one day after the entry of the unconditional writ that things had changed when the state filed for a new arrest warrant to re-arrest the petitioner who was going to be released. Are you saying it was the prosecutor's duty then to answer Judge Colt? You've said it's not the warden's duty. Are you saying it is the prosecutor's duty? Your Honor, the prosecutor, I believe, is the one who did file the motion to vacate. But even if you think the warden should have done more, which again, doesn't come from anywhere in the district court's order, even if you think she should have to be really timely, the point here is that that relief was accomplished. Right now, there's nothing more to order the warden to do. Now, if the petitioner would like to be released from the custody of the sheriff, who is holding him pursuant to a valid conviction while he awaits sentencing, then he needs to bring that in a separate habeas petition against the sheriff. But there's no more habeas relief that this court can give, nothing left to order the warden to do, since the petitioner has received all the relief he's asked the court to give him. Now, I'd like to ask you a question that will take us a little bit in a different direction. Assume that the death penalty is off the table. He was convicted in a particular year. What sentence, other than the death penalty, would be available? And I confess not understanding fully the nuances of Ohio law in this, but I thought at some times Ohio law said the options were certain terms of years without parole, but not a sentence for life without parole. What year law would we look to to find out what sentence would be available if the death penalty is off the table? So there would still be multiple sentences available, Your Honor. He could be sentenced for 30 years without parole, or he could be sentenced for life without parole under Ohio law. But Ohio law also permits him to be sentenced to death. And I want to touch briefly on the notion that you raised, that the federal court could take some of the state's sentencing options under the state law off the table, because we think that that would be an unprecedented ruling that's outside of this court's jurisdiction for at least four independent reasons. So first, there is no authority in case law for such an extreme remedy. Second, it would violate pitches, which instructs the federal courts that they may not supervise resentencing proceedings by going a step further and allowing federal courts to dictate the availability of certain sentences in those proceedings. Third, it would offend the comedy at the core of AEDPA by allowing federal courts to pick and choose which state law convictions are available in state court for state law crimes. And lastly, it would contravene the statute, which constrains this court's jurisdiction to issue remedies under Section 2254. When we issued our decision saying that there was a constitutional violation in the penalty phase, could we not have issued an unconditional grant without the opportunity for a retrial on penalty? Could we have done that? Yes, Your Honor. So if we could have done that, but we chose not to because we chose to say the state may retry the penalty phase, could we not now say, if hypothetically we wanted to, that now multiple years have passed with no resentencing, no new penalty phase? And therefore, under Satterley, it is an extraordinary situation where there should not be an opportunity for retrial of the penalty phase, even though a few years ago when we issued our opinion, we thought that would be an opportunity that the state should have. But because of their handling of this matter, we now withdraw that. Could we not do that? No, Your Honor. I may have misunderstood your predicate question, so let me clarify briefly. When this court grants a conditional writ, that is an effective writ just waiting to spring into place that gives the state a grace period to try to retry or resentence someone to cure constitutional infirmity before it has to release custody. Yes, and we gave you 180 days, and then we gave you another 180 days, and then you wanted more, and we said no. Yes, Your Honor, but the effect of not being able to resentence a petitioner while safeguarding their constitutional rights within the timeline this court gives under conditional writ is not to then effectively bar the state from resentencing at all. This court has never said that. In fact, the Supreme Court and this court have repeatedly said that the default is that even if the court or the state can't comply with the deadline under conditional writ, but still has the presumed right to retry or resentence, we can look to both Gertz and Lovins. I think Gertz is particularly helpful there. The state was on its third attempt to re-prosecute, as there wasn't even a valid conviction, third attempt to re-prosecute or prosecute the petitioner, and it had failed so far due to what this court described as blatant prosecutorial misconduct. The court still said that wasn't extraordinary circumstances enough to justify barring resentencing or retrial. Here you have a valid conviction, and so we need to be much more drastic circumstances to justify barring resentencing, which the court has never done. So for those reasons, unless the court has any further questions, we would urge the court to affirm the factual and legal determinations by Judge Oliver here, and hold that the petitioner has received all the habeas relief to which he is entitled and this court granted. Thank you. Rebuttal? Ms. Bailey, before you start, I wonder if you would address the question of jurisdiction. What's the best argument you have in case that would support that the court has jurisdiction over this matter at this time? The opinions in Satterley v. Ambrosio v. Lovins wouldn't exist if this court doesn't entertain jurisdiction. Their compliance was achieved below. They were assessing. It's a backwards-looking appeal. We're not talking about current jurisdiction over habeas. You are assessing compliance with your prior orders, and that has no significance if this court can't address compliance and address noncompliance. So the existence of those opinions, without any challenge, I believe that members of this court sat on many of them. The proof is in the pudding. Jurisdiction is here. So I have a few other, taking us back to March, I want to point out that on the record, the warden's argument is changing. Full compliance is an invention of today. And to no fault of my opponent, this happens when you change assistant attorney generals as many times as has happened in this case. If you look at the record, you can look at the Valentine's Day hearing on 2-14-23. The prosecutor stands up. This is when she initially filed a motion to vacate the sentence. And she says, well, you know, I've been conferring with the AG's office, and they think under Edelman, the only way to get rid of federal jurisdiction is to vacate, is to file a motion for vacater. Then you look at the notice that the warden rushed to file the same day vacater was eventually affected. Why was she filing in a court that no longer had jurisdiction, that she was no longer answerable to? Ms. Talley's answer to who was directed is answered on the face of the order, respondent. This continued triangulation of the actors, if the warden doesn't want to be responsible for the state of Ohio in all of its parts, it should get out of the habeas business. She is responsible for clearing up confusion from the trial prosecutor, which, by the way, is not in the record. There has been no explanation why no one acted during that period. The trial prosecutor's position on noncompliance is clear from her motion. She's bolding and underlying, like we got to comply. What's being said today here is a complete invention that is contradicted by the record in multiple places. Mr. Akbar, isn't he responsible for a fair amount of the time that expired here before there was resentencing? We've got these requests for recusal of two judges, requests for recusal of the third judge, Judge Schroeder. We've got these affidavits of disqualification, requests to represent himself along the way, requests to continue some status conferences. It doesn't seem to be that all of the, quote-unquote, delay or, you know, dragging of feet occurred at the hands of the state. It looks as though Mr. Akbar is pretty responsible for a fair amount of it. Mr. Akbar filed one motion to recuse Judge Schroeder during this period. The state court took 11 months to decide issues of freddit and competence that had been put before it before counsel was even appointed. Okay, so the other recusal, I guess, to make the record clear, those were judges who chose to recuse. They're down to one judge. Now we have the AG coming in to prosecute it because they can't find a prosecutor who's not conflicted. Trial counsel quit to become a prosecutor. I take issue with that, but more importantly, if you look at Satterley, the warden has an interest into driving us into the delay muck. Bad faith, inexcusable neglect, and abusive failures to act are disjunctive. It's or, it's and, or delay causing prejudice. He doesn't have to show prejudice for those first three things under circuit precedent, and their brief doesn't acknowledge circuit precedent. So if you look at the actions of the warden, if you look at the record, they know how to pick up the phone and call them and tell them to file a motion to vacate. They still do not have a reason why that didn't occur. That is inexcusable neglect. If they want to proffer a reason, you can assess how valid it is. Why didn't they seek an extension of time? They know how to do it. They extended the mandate. They asked for a stay of the mandate to begin with. Why is there not an extension of time? They want you to believe that whether they comply on the fifth day or the 90th day, it shouldn't matter. That should be rejected. But didn't the, didn't the, either the prosecutor or the warden, as I recall, I think it was the prosecutor, did file a motion to vacate the death sentence March, I'm thinking March 22 or thereabouts. Weeks later, if you look at Harvard. It wasn't 90 days later. It was 19 days later. We're not parsing the delay. We're parsing the reason for the neglect. If there isn't a reason, it's inexcusable. Just like they leveraged Dan's me in the notice of appeal litigation in the district court. If you want strict compliance, you need to strictly comply. And there's no strict or substantial compliance. You're pregnant or you're not. You're not in compliance. Why are you filing? It's arguably something like harmless error in the sense that your client was released by the warden to the Ashtabula County Jail within the five business days. And the vacation of the death penalty happened 90 days later. Granted that did not comply with Judge Oliver's order. Granted that. But why is it so harmful? I don't believe that you need to show that it's harmful. I think you need to show that it's inexcusable. You don't need to show harm. This is the fallacy. The actions of the warden need to be under scrutiny. Not Mr. Akbar having to defend why each of these things. And we need to question why the list is so long. Why they harm him. What's your harm is for saying strict compliance.  Edelman. What vacates a conviction is clear action by the state court. I disagree with Ms. Talley that it has to do with the prosecutors. This court applied that strictly during the compliance period. During the mandate period. There was no vacating of the conviction here. This is vacating of the penalty phase, right? The death sentence. Yes. The judge is concerned with judgments. I'd also like to point this court. I disagree that there isn't authority to impose a lesser sentence. The Supreme Court itself did that in Richmond versus Lewis. That's 506 U.S. 40. It was baked into their mandate in that case, which was a capital penalty trial. In Arizona. They said, correct the death sentence or vacate and impose a lesser. So not only does that give you support for imposing something less than death. But it also shows that if you take back that case to its logical conclusion, where we are now. With noncompliance with the mandate. The unconditional writ springs to life. They don't comply again. It supports that release as an option, as does Wilkinson versus Dotson. Scalia was clear that courts sitting in habeas, like they said in Magwood, are concerned with invalid, unconstitutional judgments. We talk about partial writs and sentencing relief. And I understand the rational appeal of that argument. But in terms of the writ, you either have a valid constitutional state judgment or you do not. He does not. And the state should be precluded from further attempts to perfect it. Thank you. Thank you. Thank you both for your argument. And the case will be submitted.